NOTICE
Decision filed 01/04/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220611-U

NO. 5-22-0611

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* PHEENIX M., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-JA-79 |
| | ) | |
| Shellie H., | ) | Honorable |
| | ) | Brett M. Olmstead, |
| Respondent-Appellant). | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Where the largely uncontradicted evidence established that respondent had made unsatisfactory progress and that terminating her parental rights was in the minor's best interests, the circuit court's orders to that effect were not against the manifest weight of the evidence.  As any argument to the contrary would clearly lack merit, we grant leave to appointed counsel to withdraw and affirm the circuit court's judgment.

¶ 2    After finding respondent, Shellie H., to be an unfit parent, the circuit court terminated her parental rights to her daughter, Pheenix M., awarding custody of the minor to the Department of Children and Family Services (DCFS) with the authority to consent to her adoption.  Respondent appealed those orders.

1

¶ 3     Respondent's appointed counsel on appeal concludes that there is no arguably meritorious contention that the court erred in so doing. Accordingly, he has filed a motion to withdraw as counsel. See *Anders v. California*, 386 U.S. 738 (1967). Counsel has notified respondent of his motion and this court provided her with ample opportunity to file a response, but she has not done so. After reviewing the record and considering counsel's motion, we agree that this appeal presents no issue of even arguable merit. Therefore, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 4                                        BACKGROUND

¶ 5     The State filed a petition for adjudication of wardship on December 19, 2019. The case came to DCFS's attention after an incident in which the minor's father, Patrick M., was walking with her. As the police approached him about an outstanding warrant, he fled, leaving the minor holding a backpack containing methamphetamine.

¶ 6     At a dispositional hearing, the circuit court found that Pheenix was neglected, although finding respondent a fit parent. The court ordered that respondent retain custody of the minor, but with DCFS as guardian, and ordered respondent to cooperate with recommended services.

¶ 7     At a permanency review hearing on January 8, 2021, DCFS caseworker Gabrielle Smith testified that respondent had been discharged from substance-abuse treatment for nonattendance, had not completed recommended parenting classes, and had complied only sporadically with drug-testing requirements. The minor had missed school on 45 days, respondent was often late picking her up after school, and she had often failed to take the minor to scheduled counseling sessions.

¶ 8     The minor's school principal had reported that respondent had missed all parent-teacher conferences except for one held remotely. Smith noted, however, that respondent maintained telephone contact with DCFS and indicated willingness to complete the recommended services.

Respondent completed a substance-abuse assessment, scheduled a counseling appointment for Pheenix, submitted to at least 15 drug screens, and signed all necessary releases.

¶ 9 On March 10, 2022, the State filed a petition to find respondent unfit and to terminate her parental rights. The State alleged that respondent was unfit for failing (1) between June 10, 2021, and March 10, 2022, to correct the conditions that led to Pheenix's removal from her care; (2) to make reasonable progress toward her return during the same time frame; and (3) to maintain a reasonable degree of interest, concern, or responsibility for her welfare. The State noted that Patrick M. had died.

¶ 10 Respondent did not appear at the adjudicatory hearing. Smith testified that it was "a struggle" to maintain contact with respondent. Near the end of 2020, Smith spoke with respondent about recommended services that included substance abuse classes, random drug screens, parenting classes, and individual counseling. Thereafter, respondent completed a substance-abuse assessment that recommended no services. However, between June 10, 2021, and March 10, 2022, respondent was required to participate in substance-abuse services because of positive drug tests. In August or September, she underwent another assessment, which recommended intensive outpatient treatment. However, respondent was not actively participating in the program as of March 10, 2022. When Smith talked to respondent about it, she consistently reported a busy family schedule, illness, or hospitalization.

¶ 11 Between June 2021 and March 2022, respondent was required to submit to two drug tests per week. However, during the entire period she completed only two tests, both of which were positive. Despite the positive tests, respondent denied using methamphetamines, THC, or amphetamines during that period.

3

¶ 12    Respondent sporadically attended online parenting classes but by March 2022 had been discharged for poor attendance. Respondent explained to Smith that she was sometimes unable "to log on and get the link." However, she never contacted Smith to report such a problem.

¶ 13    Respondent never engaged in individual counseling. In March, 2021, she said she did not like her counselor and found her unhelpful. DCFS referred her to a different agency and a new counselor. However, respondent never contacted the new agency. She explained to Smith that she had decided to remain with her previous counselor. However, she scheduled only one appointment and never provided Smith with proof that she attended.

¶ 14    Respondent also did not visit the minor regularly during the relevant time period. She was initially permitted two two-hour visits each week. However, in August, 2021, visits were reduced to once weekly, and in October, they were changed to bi-weekly in response to respondent's inconsistent attendance and the minor's resultant school struggles and anxiety.

¶ 15    Respondent acknowledged to Smith that her inconsistent attendance at visitations was harming the minor, but her attendance remained sporadic through March 2022, when the frequency of visits was reduced to once monthly.

¶ 16    The court found respondent an unfit parent on all three bases alleged in the petition. DCFS then filed a best interest report in which it recommended terminating respondent's parental rights. In addition to the report, the court considered an email from the probation department stating that respondent had not appeared for a court-ordered drug test, a letter from the minor's foster parents, and a letter from Pheenix expressing a desire to be adopted by her foster parents.

¶ 17    At a best-interests hearing on September 7, 2022, respondent testified that she had been discharged from substance-abuse services but had another intake session scheduled for the following week. She had been in pain since July 5 and had kidney surgery on July 21.

4

¶ 18    Respondent said that she and Pheenix had a "very tight bond." Respondent attended all the visits she could when not dealing with physical ailments. The minor appeared to enjoy the visits.

¶ 19    Respondent expressed concern that the minor had not received her COVID booster and pneumonia vaccine, that the foster mother became "very agitated" that Pheenix had run into a cousin at the grocery store, and that the foster parents had posted a picture of Pheenix on a social media site in violation of DCFS policy.

¶ 20    Respondent learned that Pheenix had been referred for counseling in August. Respondent believed that these issues were the result of Pheenix missing respondent and her biological family while "being told differently" by her foster parents.

¶ 21    Respondent testified that she had completed parenting classes and was going to "continue for mental health" and "continue counseling." Respondent believed that it was in Pheenix's best interest to be with respondent and her family.

¶ 22    The court, although acknowledging that respondent had a genuine bond with the minor and had made some efforts toward returning her home, found that it was in Pheenix's best interest to terminate respondent's parental rights. Respondent timely appealed.

¶ 23                             ANALYSIS

¶ 24    Respondent's appointed appellate counsel concludes that he can make no reasonably meritorious argument that the circuit court erred in finding respondent unfit and terminating her parental rights. Counsel first maintains that the court did not err in finding that respondent was unfit by virtue of failing to make reasonable progress toward the goal of reunification. See 750 ILCS 50/1(D)(m) (West 2020). We agree.

5

¶ 25    The State must prove parental unfitness by clear and convincing evidence. *In re Jordan V.*, 347 Ill. App. 3d 1057, 1067 (2004). We generally defer to the circuit court's findings due to its superior opportunity to observe the witnesses and evaluate their credibility. *Id.* Thus, we will not reverse a trial court's finding of parental unfitness unless it was contrary to the manifest weight of the evidence. *Id.*

¶ 26    "[T]he benchmark for measuring a parent's 'progress toward the return of the child' under section 1(D)(m) of the Adoption Act encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *In re C.N.*, 196 Ill. 2d 181, 216-17 (2001).

¶ 27    Because respondent did not attend the adjudicatory hearing, the only evidence came from Smith. According to her testimony, respondent, rather than making progress, actually regressed in some areas during the relevant period. Respondent's twice-weekly visitations were eventually reduced to once monthly due to her sporadic attendance and the consequent strain on the minor. Also, respondent was required to undergo twice-weekly drug tests but, in nine months, provided only two, which were positive. Intensive outpatient therapy was recommended but she did not complete it. She infrequently attended online parenting classes and was eventually dropped for lack of attendance. Based on this evidence, the circuit court's finding that she failed to make reasonable efforts was not against the manifest weight of the evidence.

¶ 28    Given that the court's finding that respondent failed to make reasonable efforts was supported by the evidence, we need not address the additional alleged bases of unfitness. See *In re M.J.*, 314 Ill. App. 3d 649, 655 (2000) (on review, if there is sufficient evidence to satisfy any one statutory ground we need not consider other findings of parental unfitness).

¶ 29     Counsel next suggests that the court's finding that Pheenix's best interests required terminating respondent's parental rights was not against the manifest weight of the evidence and that arguing otherwise would be frivolous.  If a circuit court finds a parent unfit, the court must then decide whether the State has proven, by a preponderance of the evidence, that the child's best interests mandate that parental rights be terminated.  705 ILCS 405/2-29(2) (West 2020); *In re D.T.*, 212 Ill. 2d 347, 367 (2004).  During this second stage of the proceedings, the focus shifts from the rights of the parents to the best interests of the child.  *In re P.S.*, 2021 IL App (5th) 210027, ¶ 30.  The State must prove by a preponderance of the evidence that termination is in the child's best interests.  *In re D.T.*, 212 Ill. 2d at 366.

¶ 30     Here, the circuit court found that Pheenix's foster home was able to meet her needs.  By contrast, respondent still was not able to provide for Pheenix's physical safety and general welfare.  While respondent made some halting attempts at making the changes in her life necessary to have Pheenix returned to her, she was not able to follow through to completion.  The court noted that she had been discharged several times from services and had not been in a position to exercise custody since the dispositional hearing.

¶ 31     The court acknowledged respondent's legitimate health issues and that she had a sincere bond with the child and demonstrated a sincere desire to work toward reunification.  Nevertheless, she had not truly begun to undertake the efforts necessary to do so.  Thus, its finding that termination was in the minor's best interests was not against the manifest weight of the evidence.

¶ 32                                              CONCLUSION

¶ 33     Accordingly, we agree with counsel that this appeal presents no issue of even arguable merit.  We grant counsel leave to withdraw and affirm the circuit court's judgment.


¶ 34     Motion granted; judgment affirmed.